Garsh, E. Susan, J.
Cable News Network, Inc. (“CNN”) sought an expedited hearing on its Motion for Daily Access to Exhibits, which the court allowed. In the interests of expedition, the court issued its decision orally immediately after hearing argument from the parties. The motion was denied.[1]
No exhibits have been impounded. CNN’s motion, while captioned as one for daily access to exhibits, at no point actually contends that it has been unable to receive daily access to all photographic and documen-taiy exhibits, simply that it has not obtained full color photographs of such evidence or a copy of videotaped evidence by the end of the trial day.
For the following reasons, CNN’s motion has been denied.
BACKGROUND
The motion is not supported by any affidavit. Pursuant to Superior Court Rule 9, “[i]n criminal cases the court need not hear any motion . . . grounded on facts unless the facts aire verified by affidavit.” Because of the importance of clarifying the level of access actually being granted, the court agreed to entertain the motion. Before discussing the controlling legal principles, it is helpful to set out some background information not contained in the motion.
This trial is taking place in a courtroom which has two 47-inch high-definition monitors specifically positioned for the public; they are on the wall directly in front of the bar. Smaller screens are in front of the jurors, the witness, at counsel table and on the bench. The images on the two large screens are clearly visible to all members of the public. Pursuant to SJC Rule 1:19, a television and still camera have been filming *485 and taking pictures since the beginning of the trial, and, at times, a third web camera has been recording as well. As exhibits — photographic, documentary, and real evidence such as shell casings, projectiles, a baseball cap' and a license — have been placed on a presenter, they were displayed, generally magnified, on the large screens. The authorized cameras can and have opted to capture the images on those screens in full color. To the extent that CNN may wish that the pool cameras would take more images of evidence appearing on the monitors, it must address such concern, if any, to the pool.
Twenty seats in the courtroom have been reserved for the media, not including four seats for the three pool cameras and a sound person. The media has had ample opportunity to see and to hear the evidence, including exhibits and the one videodisc played for the jury-
The clerk of courts has made extraordinary efforts to accommodate the public interest in this proceeding, taking the unusual step of assigning two full-time session clerks to this trial unless one is needed to cover another session because of absences. The result has been that, every single day since the first day of the trial, the public, including the media, has been able to obtain copies of all documentary and photographic exhibits. Daily copies of such exhibits have been provided, and the court anticipates that, whenever it is feasible given the clerk’s other responsibilities, such copies will continue to be provided at the end of the trial day.
The Clerk’s office does not have a color copier to make color copies of exhibits.
To date, only one video clip has been played in court during the trial. A copy of that video clip was not provided by the end of the day. A copy was made available within approximately forty-eight hours. Some of the videos that may be introduced may turn out to be more difficult and more time consuming to copy than others. With respect to the one video clip that was marked as an exhibit, it was played in open court and an authorized television camera and a web camera, if present, were free to film the video clip in its entirety.
The pool cameras are situated in the courtroom in the locations that they requested during the pre-trial media meeting.
DISCUSSION
The media’s right of access to judicial proceedings and records derives entirely from the public’s right of access. The media has neither a greater nor a lesser right of access than any other member of the public. As the United States Supreme Court stated in Nixon v. Warner Communications, Inc., 435 U.S. 589, 609 (1978), a case holding that the media does not have a First Amendment right to obtain copies of exhibits admitted as evidence, “(t]he First Amendment generally grants the press no right to information about a trial superior to that of the general public.”
Following the holding in Warner Communications, Inc., other courts have held that the First Amendment is satisfied by the media’s ability to be present in the courtroom when the exhibits are introduced and the recordings are played. In re Providence Journal Co., Inc., 293 F.3d 1, 16 (1st Cir. 2002); United States v. Sampson, 297 F.Sup.2d 342, 344 (D.Mass. 2003). Moreover, here, unlike those federal cases, the media is not only able to be present in the courtroom when the exhibits are introduced but is also able to photograph those exhibits in color as they are put on the monitor.
There undoubtedly is a common-law presumption of access to judicial documents relied upon injudicial proceedings that extends to exhibits admitted into evidence during a trial. In re Providence Journal, 293 F.3d at 9; Sampson, 297 F.Sup.2d at 345. This right, which originated with documentary evidence, has been extended to videotapes and audiotapes. In re Application of NBC, Inc., 635 F.2d 945, 950 (2d Cir. 1980). The Massachusetts cases cited by CNN recognize the common-law right of access to judicial records but concern impoundment or sealing of records and do not address the parameters of the right as applied to trial exhibits.
In The Republican Co. v. Appeals Ct., 442 Mass. 218, 222 (2004), one of the Massachusetts cases cited by CNN, the Court’s opinion contains the oft-cited quotation from Justice Holmes in Cowley v. Pulsifer, 137 Mass. 392, 294 (1884), to the effect that “(i]t is desirable that (judicial proceedings] should take place under the public eye . . . and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.” This trial is taking place “under the public eye.” Citizens who are not physically present in the courtroom are able to “satisfy [themselves] with [their] own eyes as to the mode in which a public duly is being performed” by seeing and hearing all the evidence, including exhibits as they are placed on the presenter, in real time and in color because the trial is being live streamed. Indeed, to the extent that individuals may not have the opportunity to watch in real time, they have the same ability to see and hear the evidence in color by accessing archived footage of the trial.
The right to inspect and copy judicial exhibits is not absolute. Decisions as to access are best left to the sound discretion of the trial judge, exercised in light of the relevant facts and circumstances of the particular case. Nixon v. Warner Communications, Inc., 435 U.S. at 599; United States v. Modarressi, 720 F.Sup. 16, 17 n.1 (D.Mass. 1988).
The First Circuit has stated that the trial court may, in its discretion, allow the media to copy tapes that have been admitted into evidence, but there is no requirement that the court must afford such access. *486 In re Providence Journal, 293 F.3d at 16-17. As discussed in Sampson, 297 F.Sup.2d at 345-46, with respect to recordings, courts have exercised their discretion in various ways; in some instances, the recordings have not been made available to the media, in some cases they have been provided to the media after the proceedings in which they were evidence concluded, and in other cases they were released while a prosecution was still in progress.
CNN concedes, as it must, that a trial judge, in the interest of the fair administration of justice, may impose reasonable time, place, and manner limitations on the media’s access to judicial records. Where the exhibits are not in a form so as to be easily copied, the court may deny copying based on administrative difficulties. See, e.g., In re Providence Journal, 293 F.3d at 16-17 (stating that the trial court did not abuse its discretion in denying the media’s request to copy videotapes and audiotapes where the state introduced only selected excerpts during the trial using a specialized software program and it was not administratively feasible for the clerk’s office to create a CD containing only those excerpts played in open court); United States v. Webbe, 791 F.2d 103, 107 (8th Cir. 1986) (stating that, in denying access to surveillance tapes played at trial, trial court properly could have considered administrative difficulties because parts of tape were not admitted into evidence and copying would adversely affect progress of the trial); United States v. Rosenthal, 763 F.2d 1291, 1294-95 (11th Cir. 1985) (stating that trial court may consider whether contemporaneous access will be administratively difficult and disrupt progress of trial); United States v. Criden, 648 F.2d 814, 823-24 (3d Cir. 1981) (photocopying of tapes should be permitted as long as equipment does not occupy an unreasonable amount of working space or unreasonably interfere with the regular routine of the office involved and does not damage or impair the physical records or their contents).
CNN cites no case for the proposition that its common-law right of access mandates the clerk to provide it with color copies of color photographs marked as exhibits even when those photographs have been displayed in open court, photographed by the media’ in court in color, and the clerk’s office does not possess a color copier.
CNÑ cites no case for the proposition that its common-law right of access mandates the clerk — irrespective of its resources — to provide CNN by the close of each day copies of all documentary, photographic, and video recordings introduced into evidence that same day. Here, through extraordinary dint of effort, the clerk of courts has, in fact, provided copies of all documentary and photographic evidence in that time frame, and it provided a copy of the videoclip introduced into evidence within two days.
CNN cites Sampson as a case “authorizing access to admitted recordings ‘at the conclusion of each trial day.’ ” In CNN’s motion, the phrase “at the conclusion of each trial day” appears as a quote from Sampson. The quotation is taken out of context and does not support CNN’s position. What the Court in Sampson actually ruled is: “In this case, the court will require written requests for the recordings at the conclusion of each trial day. The compact discs which contain the recordings will be duplicated by the staff of the District Court as quickly as their other important responsibilities permit.” Sampson, 297 F.Sup.2d at 347-48. CNN is entitled to nothing more than duplication, where feasible, as quickly as the clerk’s other important responsibilities allow.
United States v. Peters, 754 F.2d 753, 763 (7th Cir. 1985), also relied upon by CNN, is inapposite. That case concerned an order excluding a single reporter from access to trial exhibits as a form of discipline of that reporter. The Court recognized that a trial judge has discretion to manage her courtroom and to control access to trial exhibits if that aids in the conduct of an orderly trial. CNN has not been treated differently than any other member of the media.
CNN’s request that, in the presence of court staff, at the end of each trial day, it be allowed to (1) take physical possession of color photographs marked as exhibits so that it can run them through a color scanner; (2) take physical possession of video footage marked as exhibits so it can download or otherwise reproduce them; and (3) inspect and photograph all other exhibits is unreasonable. While CNN may be prepared, as it states, to share and coordinate its access with other media entities, it is not only media entities that have a common-law right of access. If CNN were to be allowed to directly inspect and to itself photocopy, photograph or download exhibits after the trial day ends, so would any other interested member of the public.
CNN argues that there are no compelling circumstances that justify restricting CNN to something less than complete daily access to all trial exhibits. When the phrase “complete daily access” is defined as allowing a member of the media to handle trial exhibits, there most certainly are compelling circumstances. Allowing any third parly — media or non-media — to touch or otherwise handle exhibits in an ongoing trial risks damaging or altering the evidence and compromising the integrity of the exhibits, jeopardizing the defendant’s Sixth Amendment rights, disrupting the efficient performance of justice, and creating obvious problems for the clerk in carrying out his statutory mandate to preserve the integrity of the evidence. Although the court in NBC, Inc., 635 F.2d at 945, 952, n.6, did not disapprove of a procedure by which the networks would be allowed to copy tapes during a trial? all parties acknowledging that it would pose no risk to the integrity of the tapes, here the parties do not agree that the procedure CNN seeks the court to allow would pose no risk to the integrity of the evidence. The *487 defendant has opposed CNN’s motion. The clerk is required by statute to have the care and custody of all the records, books, and papers which pertain to or are filed or deposited in their respective offices and to preserve all the files and papers of all sessions of the court. G.L.c. 221, §§2, 14. Nothing in NBC, Inc. mandates that a court, as a matter of constitutional or common law, adopt the procedure referenced in the footnote in that case. Further, unlike the media in NBC, Inc., the media here has the chance to listen to and to record the images and sound as video exhibits are played for the jury.
The NBC, Inc. case also does not address the right of a member of the public, such as CNN, to make its own photocopies or downloads or to photograph all exhibits outside of the courtroom. By statute, the clerk is required only to “make copies of all papers on file,” G.L.c. 221, §2, not to physically display exhibits outside the courtroom.
Photographs are not allowed to be taken anywhere in this courthouse in any case by anyone, except as permitted by SJC Rule 1:19. That rule allows photographs to be taken only during proceedings and only by one still camera, one television camera, and one web camera. During the course of this trial, CNN is entitled to nothing more under the First Amendment, the common law or Rule 1:19.
For all these reasons, the court orally denied CNN’s request that the press be afforded the opportunity to inspect, photocopy, photograph or download each exhibit entered into evidence at the conclusion of each trial day.
ORDER
For the foregoing reasons, it is hereby ORDERED that Cable News Network, Inc.’s Motion For Daily Access to Exhibits be DENIED.

 CNN’s Motion for Daily Access to Exhibits was filed on February 5, 2015. A hearing was held the next day. When the Court issued its oral ruling, it indicated that it did not intend to file a written decision, but would, instead, order a transcript, which it reserved the right to edit. The Court has taken advantage of the weather-related trial delays to instead issue a written decision.